FILED
CLERK, U.S. DISTRICT COURT
AUG 10 1999
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

AUG 11 1999
TRINA WASHINGTON
DEPUTY CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

RECEIVED/FISCAL
CLERK, U.S. DISTRICT COURT
AUG 10 1999
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FORTAS BENEFITS INSURANCE CO., ) CV 99-2357 SVW (Ex)
                                 )
        Plaintiff,      ) ORDER GRANTING DEFENDANT JESSICA
                           ) VELLUM ZARCO'S MOTION FOR SUMMARY
    v.                     ) JUDGMENT AND DENYING DEFENDANT
                           ) JOSE ANTONIO ZARCO'S MOTION FOR
JOSE ANTONIO ZARCO, Sr., an  ) SUMMARY JUDGMENT
individual, and JESSICA VELLUM )
ZARCO, an individual.       )
                           )
        Defendants.     )



THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

## I. INTRODUCTION

The present case is an interpleader action instituted by Fortas Benefits Insurance Company to resolve conflicting claims to the proceeds of a particular employer-provided term life insurance policy. The case presents an issue of first impression in this country: How quickly after marriage does an employer-provided term life insurance policy become community property?

## II. BACKGROUND

The principal facts of the case are undisputed:

<u>Jose, Jr. First Receives Coverage</u>: Jose Antonio Zarco, Jr. ("Jose, Jr.") was first employed by Metawave Communications Corporation on January 15, 1997. As a benefit of his employment, Metawave provided Jose, Jr. with term life insurance coverage underwritten by Fortas Benefits Insurance Company ("Fortas"). At the

time Jose, Jr. first became eligible for this benefit, he was unmarried. When asked to identify a beneficiary for his life insurance policy, he named his father, Jose Antonio Zarco, Sr. ("Jose, Sr.").

Mechanics of the Policy: The Fortas policy was a term policy, with a term of a single month. Prior to the start of any given month, Fortas ascertained the names of the individuals then employed by Metawave. Also in advance of the start of a given month, Fortas would issue an invoice to Metawave for the payment of the current month. Metawave was then required to pay at the beginning of the covered month.

Two details of the policy deserve particular attention. The first is the fact that the policy contained a grace period of one month. Should Metawave cease payments, Metawave employees would nevertheless be covered for an additional month. The Court notes, however, that Metawave would still be liable for the premiums due on the grace period. In other words, Fortas could not cancel benefits immediately because Metawave failed to pay but neither was Fortas providing a "free" extra month. Rather, the grace period effectively assured Metawave's employees that Fortas could not use a late payment as an excuse to deny the existence of coverage.

The second detail is that the policy required that the beneficiary remain a full-time employee at Metawave. Should an

2

employee cease employment at Metawave, coverage ceases immediately rather than running through the end of the term.

<u>Fortas Bills Metawave on December 16, 1997 for January 1998</u>: Based on the information about Metawave employees in its possession, Fortas on December 16, 1997 sent Metawave an invoice for the month of January, 1998. Payment was due from Metawave on the invoice at the beginning of January, 1998.

At the time that Fortas created the invoice and billed Metawave, Jose, Jr. was still unmarried.

<u>Jose, Jr. Marries Jessica Jellum on December 27, 1997</u>: On December 27, 1997, Jose, Jr. married Defendant Jessica Jellum Zarco ("Jessica"). However, Jose, Jr. did not modify the named beneficiary for his life-insurance policy.

<u>Metawave Pays the Invoice for January on January 23, 1998</u>: On January 23, 1998, Metawave paid Fortas in response to the invoice issued by Fortas on December 16, 1997.

<u>Jose, Jr. Dies in an Unfortunate Accident on January 27, 1998</u>: While working for Metawave on January 27, 1998, Jose, Jr. fell from a utility pole. He was survived by his father, Jose, Sr., and his widow, Jessica.

<u>Fortas Files This Interpleader Action</u>: Because Jose, Jr. died in a work-related accident, the policy provided for a payment of $150,000. Because Jose, Sr. was the named beneficiary, he was at a minimum entitled to half of the payment and Fortas paid $75,000 to

Jose, Sr. However, the entitlement to the remainder of the policy depended upon whether the term life insurance was community property or not. If community property, Jessica was entitled to the remaining half of the policy. If, however, the policy were not community property, then Jose, Sr. would be entitled to the remainder of the policy. In the face of the competing claims, Fortas filed an interpleader action covering the second half of the proceeds and naming Jose, Sr. and Jessica as the defendants.

### III. LEGAL ANALYSIS

1. <u>The Nature of Term Life Insurance Depends Upon the Nature of the Premiums Used to Purchase the Term at Issue</u>

Both the decedent's father and his widow agree that the nature of the premiums used to purchase a particular term of term life insurance determine the character of the proceeds of that life insurance. See <u>Estate of Logan</u>, 191 Cal.App.3d 319, 321 (1987) ("If the insured dies during the term paid with community funds, the proceeds of the policy are community property.")

2. <u>The Product of an Individual's Effort During the Marriage Constitute Community Property</u>

It is well-established that the products of an individual's efforts during marriage constitute community property. See <u>In re Marriage of Dekker</u>, 17 Cal.App.4th 842, 851 (1993); Cal.Fam.Code § 760. By contrast, products of an individual's efforts before

marriage constitute an individual's separate property. Cal.Fam.Code § 770 (I)(a).

### 3. <u>Coverage for January Was a Product of Jose, Jr.'s Effort During the Marriage, Not Before the Marriage</u>

The decedent's father presents two arguments. First, Jose, Sr. argues that the policy was established by Fortas's invoice on December 16, 1997. At that time, argues the decedent's father, Metawave became obligated to pay the premium and consequently the payment should be characterized from the perspective of December 16, 1997.

Second, Jose, Sr. argues that the grace period covered January, 1998 based on coverage during December 1997. In other words, Jose, Sr. argues that Jose, Jr. became entitled to coverage in January 1998 because he had been employed and covered during December 1997. The decedent's father thus argues that the coverage in January, 1998 is the result of efforts while Jose, Sr. was still single.

The Court disagrees. The critical question is not when Fortas decided that Jose, Jr. would be covered during the relevant period, but rather what efforts resulted in the payment of the premium for January, 1998. It is evident that Jose, Jr.'s efforts during January, 1998 were the efforts that resulted in payment of the premium for January, 1998.

5

The Court believes that the most important piece of evidence on this score is the fact that insurance would have terminated immediately if Jose, Jr. had ceased to be employed at Metawave. Although decedent's father attempts to characterize this as merely fulfilling a condition for property that Jose, Jr. already owned, the Court believes that it is strong evidence that the insurance was a benefit that resulted from the continuing efforts of Jose, Jr. In other words, the continuation of the insurance was a benefit extended by Metawave in return for Jose, Jr.'s efforts during January, 1998.

This conclusion is reinforced by the fact that the payment on insurance was not due until January, 1998 (at which time Jose, Jr. was already married to Jessica.)[1] Although decedent's father argues that Metawave was obligated to pay as soon as the invoice was issued, the key question is not when the obligation arose but the character of the payment that was made.[2] By January, 1998, Jose, Jr. was

---

1. The Court explicitly notes that the agreement of the two factors (the requirement of continued employment and payment due/paid after the marriage) means that the Court does not need to consider the result if the factors disagreed. Put differently, although the Court considers the requirement of continued employment to be a key factor, the Court expresses no opinion as to whether the employer-provided term life insurance would have become separate property had Jose, Jr. divorced Jessica on the day before his tragic accident (but after the employer's payment was due and made).

2. For example, a married individual who signs a term life insurance contract may thereby necessarily be immediately obligated to pay the life insurance contract. However, the insurance is only community property if community property assets are expended to pay for the policy. If separate property is expended to pay for the policy, then the insurance is separate

6

already married to Jessica and the payment was thus made on behalf of Jose, Jr. because he continued to be an employee as a married individual.

The Court finally notes that the grace period is irrelevant to this analysis because the grace period was not "purchased" with pre-marriage assets. Although it is true that the obligation of Fortas to provide the grace period (and the corresponding obligation of Metawave to pay for the grace period) may have arisen from pre-marriage conduct, this question is irrelevant to the character of the funds used to actually pay for any grace period. In this case, as discussed above, Metawave paid for the January coverage as a result of Jose, Jr.'s continued employment during January. As such, the coverage was a result of the efforts of the community and the insurance proceeds belong to the community.

**CONCLUSION**

For the reasons discussed above, the employer-provided term life insurance for the term of January 1998 is community property. As the property is community property, decedent's widow is entitled to a half-share of the proceeds of the life insurance.

---

property.
    Likewise, a single individual who signs a term life contract may thereby necessarily be immediately obligated to pay the contract. Assume the individual was married before the bill arrived. Assume further that the individual paid the bill with money provided as a wedding gift to the community. Although the obligation was incurred by a single person, the property expended was community property and therefore the insurance would be a community asset.

7

The Court therefore GRANTS Defendant Jessica Jellum Zarco's motion for summary judgment, and denies Defendant Jose Antonio Zarco, Sr.'s motion for summary judgment.

IT IS SO ORDERED.

DATED: 8/9/99

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE